CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

August 19, 2024

LAURA A. AUSTIN, CLERK
BY:
      s/A. Beeson
      DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **JOHN SHANNON DOLJAC,** | ) | |
| Petitioner | ) | **Case No. 7:23-cv-00595** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CHADWICK S. DOTSON,** | ) | |
| | ) | **By: Michael F. Urbanski** |
| Respondent | ) | **Senior United States District Judge** |

### MEMORANDUM OPINION

On September 13, 2023, John Shannon Doljac, represented by counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 2020 conviction in the Rockingham County Circuit Court on one count of attempted second degree murder and one count of second-degree murder. ECF No. 1. The government filed a motion to dismiss on November 6, 2023, to which Doljac replied on November 27, 2023. ECF Nos. 3, 24. For the reasons stated below, the court **GRANTS** the government's motion to dismiss and **DISMISSES** Doljac's application for habeas corpus relief.

### I. Background

This case arises from an incident that occurred in the early morning hours of June 30, 2018. Although the parties disagree about some of the details, they agree for the most part on a proffer of evidence by the Commonwealth of Virginia at the guilty plea hearing for petitioner Doljac, which included the following: Doljac and his girlfriend, Kara Blankenbaker, were out for the evening in downtown Harrisonburg, Virginia. They met up with Kirkman Rountree and his friend, Christopher Jones, and asked them if they could help Doljac and Blankenbaker obtain cocaine. Doljac and Blankenbaker had not met Rountree or Jones prior to that evening.

The four left a bar together and walked toward a parking deck where an altercation occurred. There was a shoving match, and Doljac began to hit Rountree. Jones intervened and hit Doljac, and then Jones and Rountree walked away from the scene. Guilty Plea Tr., ECF No. 8-2 at 19, 48. Doljac and Blankenbaker got in Blankenbaker's vehicle with Blankenbaker driving and drove a short way until they came upon Rountree and Jones. Id. at 49. Doljac got out of the vehicle with a handgun and fired eleven times at Rountree and Jones, killing Rountree and injuring Jones. Id. at 41. Although Doljac testified that he had no memory of the actual shooting, he agreed that the proffer was an accurate statement of the evidence, except for disagreeing with "why and how" the original altercation occurred. Id. at 54–55.

On January 6, 2020, Doljac pled guilty to one count of second-degree murder for the killing of Rountree and one count of attempted second degree murder for shooting and injuring Jones. He originally was charged with first degree murder, attempted first degree murder, and the use of a firearm in the commission of a murder, but the charges were reduced as part of his agreement to plead guilty. Guilty Plea Tr., ECF No. 8-2 at 1, 28; Agreed Disposition, ECF No. 12-1 at 20–27; Order from the Circuit Court of Rockingham County, ECF No. 8-3 at 33. On September 1, 2020, following preparation of a presentence report and a hearing, Doljac was sentenced to a term of 40 years on the second-degree murder charge, with 10 years suspended, and a consecutive 10-year sentence with 8 years suspended on the attempted second-degree murder charge, for a total active sentence of 32 years. Sent. Order, ECF No. 8-2 at 10–13. The sentence was an upward departure from the guidelines range of 13 years and 6 months to 22 years and 6 months. Sentencing Guidelines Cover Sheet, ECF No. 8-2 at 1. The court gave the following explanation for its upward departure:

2

> Defendant had earlier been in an altercation [with] the two
> victims. Defendant and his girlfriend left the altercation site in a
> motor vehicle. They came upon the victims on Court Square in
> downtown Harrisonburg. Defendant exited the vehicle with a
> pistol, fired eleven shots, killing one victim and injuring the other.
> Defendant left [without] rendering aid and was later captured.
> Overall situation and act made guidelines simply inadequate on
> these factors.

Id. at 2.

Doljac filed an appeal, arguing that the trial court erred in sentencing him to an excessive sentence outside the guidelines. ECF Nos. 8-2 at 17–18; 7-1 at 10–22. On March 18, 2021, the Court of Appeals of Virginia denied the appeal in an unpublished per curiam opinion. ECF No. 7-1 at 36–43. On April 2, 2021, Doljac filed a notice of appeal with the Supreme Court of Virginia. Id. at 44–45. On November 9, 2021, the Virginia Supreme Court refused the petition for appeal. Id. at 47–49.

On October 29, 2022, Doljac filed a petition for habeas corpus relief in the Supreme Court of Virginia. ECF No. 11. He argued the same grounds in his state habeas petition that he argues here. Id. On May 18, 2023, the Supreme Court of Virginia dismissed the petition for habeas corpus relief. Doljac v. Director, Record No. 220704.[1]

Doljac filed the pending petition in this court on September 13, 2023, and asserts that his attorneys provided ineffective assistance of counsel when they did the following:

(1) Failed to advise Doljac that a knife was found near Rountree's body;

(2) Failed to advise Doljac of Christopher Jones' violent history;

(3) Failed to present evidence of Jones' violent history to the trial court at sentencing;

---

[1] The state habeas opinion was not part of the record and neither party submitted a copy of the opinion in its briefing, but the court obtained a copy of the opinion from the Clerk of the Supreme Court of Virginia.

3

(4) Recommended that Doljac plead guilty despite there being insufficient evidence to convict him at trial;

(5) Failed to show that the reason Doljac did not stop and render aid was because he saw Rountree and Jones walking away from the scene; and

(6) Failed to object to inflammatory and incorrect statements made by the Commonwealth at the sentencing hearing.

ECF No. 1-1. In its motion to dismiss, the Commonwealth argues that Doljac cannot meet his burden of showing that the state habeas determination was contrary to or an unreasonable application of clearly established Supreme Court precedent or an unreasonable determination of facts based on the evidence in the record.

## II. Analysis

### A. Standard of Review

A federal court may grant a petitioner relief from a state court judgment if the petitioner is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). However, federal courts reviewing claims that have been adjudicated on the merits in the state court may grant relief on such a claim only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)–(2). The question is not whether the federal court would reach the same factual findings, or even whether the federal court believes the state court's factual findings are wrong. The court must find more than just an incorrect determination of facts, as "unreasonable determination of the facts" is "a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007).

4

**B. Ineffective Assistance of Counsel**

Criminal defendants have a Sixth Amendment right to effective legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish that counsel's assistance was not reasonably effective, a defendant must satisfy a two-prong analysis: he must show that (1) counsel's performance fell below an objective standard of reasonableness; and (2) he was prejudiced by counsel's alleged deficient performance. Id.

When considering the reasonableness prong of Strickland, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. The court must judge counsel "on the facts of the particular case," and assess counsel's performance "from counsel's perspective at the time." Id. The reviewing court must not rely upon "the distorting effects of hindsight," but must presume that counsel's decisions and actions fell within the wide range of reasonable strategy decisions. Id. at 689–90. To satisfy the prejudice prong of Strickland, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

Thus, when reviewing a state court's assessment of an ineffective assistance of counsel claim, federal review is "doubly deferential," because the deferential standard of review under the statute overlaps with the deferential standard under Strickland. Cullen v. Pinholster, 563 U.S. 170, 190 (2011). In other words, the federal court is to afford "both the state court and the defense attorney the benefit of the doubt." Burt v. Titlow, 571 U.S. 12, 15 (2013).

Because Doljac pled guilty to second degree murder and attempted second degree murder, he can only allege ineffective assistance of counsel as it relates to the voluntariness of his guilty plea.

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of his constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in [McMann v. Richardson, 397 U.S. 759 (1970)].

Tollett v. Henderson, 411 U.S. 258, 267 (1973). "A guilty plea is valid if it 'represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" United States v. Moussaoui, 591 F.3d 263, 280 (4th Cir. 2010) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)). When looking at the constitutional validity of a guilty plea, "'courts look to the totality of the circumstances surrounding [it], granting the defendant's solemn declaration of guilt a presumption of truthfulness.'" Id. (quoting Walton v. Angelone, 321 F.3d 442, 462 (4th Cir. 2003)).

When a petitioner argues that he received ineffective assistance of counsel as part of a plea agreement, he must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). The petitioner "'must convince the court'" that the decision to go to trial "'would have been rational under the circumstances.'" United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012) (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)). "[W]hat

matters is whether proceeding to trial would have been objectively reasonable in light of all the facts." Id.

**1. Self-Defense**

Doljac's first two grounds for habeas corpus relief are based on his assertion that but for his attorneys' ineffective assistance of counsel, he would have chosen to go to trial on the charges and asserted that he acted in self-defense. Accordingly, it is appropriate to engage in a short review of the law of self-defense in Virginia.

"In Virginia, self-defense includes both subjective and objective components. The defendant 'must have believed and must have had reasonable ground to believe, at the time [he acted], that he was in ... danger.'" Colas v. Tyree, 302 Va. 17, 29, 882 S.E.2d 625, 632 (2023) (quoting Perkins v. Commonwealth, 186 Va. 867, 877, 44 S.E.2d 426, 430 (1947)). "A defendant may always act upon reasonable appearance of danger, and whether the danger is reasonably apparent is always to be determined from the viewpoint of the defendant at the time he acted." McGhee v. Commonwealth, 219 Va. 560, 562, 248 S.E.2d 808, 810 (1978).

> The "bare fear" of serious bodily injury, or even death, however well-grounded, will not justify the taking of human life. Stoneman v. Commonwealth, 66 Va. (25 Gratt.) 887, 900 (1874). "There must [also] be some overt act indicative of imminent danger at the time." Vlastaris v. Commonwealth, 164 Va. 647, 652, 178 S.E. 775, 776 (1935). See also Yarborough v. Commonwealth, 217 Va. 971, 975, 234 S.E.2d 286, 290 (1977); Mercer v. Commonwealth, 150 Va. 588, 597, 142 S.E. 369, 371 (1928). In other words, a defendant "must wait till some overt act is done[,] ... till the danger becomes imminent." Vlastaris, 164 Va. at 652, 178 S.E. at 777. In the context of a self-defense plea, "imminent danger" is defined as "[a]n immediate, real threat to one's safety...." Black's Law Dictionary 399 (7th ed.1999). "There must be ... some act menacing present peril ... [and][t]he act ... must be of such a character as to afford a reasonable ground for believing there is a design ... to do some serious bodily harm, and imminent danger

of carrying such design into immediate execution." <u>Byrd v. Commonwealth</u>, 89 Va. 536, 539, 16 S.E. 727, 729 (1893).

<u>Commonwealth v. Sands</u>, 262 Va. 724, 729, 553 S.E.2d 733, 736 (2001).

In addition, "[t]o justify the slaying of another in self-defense, the defendant shall not have wrongfully occasioned the necessity. A man shall not in any case justify the killing of another by a pretense of necessity, unless he was without fault in bringing that necessity upon himself." <u>Bell v. Commonwealth</u>, 2 Va. App. 48, 55, 341 S.E.2d 654, 658 (1986) (citing <u>McCoy v. Commonwealth</u>, 125 Va. 771, 776, 99 S.E. 644, 645 (1919)). In other words, "[a] man cannot go a–gunning for an adversary and kill him on the first appearance of resistance, and rely upon the necessity of the killing as an excuse therefor." <u>Sims v. Commonwealth</u>, 134 Va. 736, 760, 115 S.E. 382, 390 (1922). Against this backdrop, the court looks at Doljac's assertion that but for his counsel's ineffective assistance, he would have insisted on going to trial where he would have argued that he shot Rountree and Jones in self-defense.

### (a) Failure To Advise Doljac That a Knife Was Found Near Rountree's Body

Doljac argues that had his attorneys told him that a knife was found near Rountree's body, and that Jones told police that he and Rountree "were both armed with knives" at the time of the offense, that he would have insisted on going to trial to argue that he shot the men in self-defense. Pet., ECF No. 1 at 8. He claims that Commonwealth's Exhibit 15, which was introduced during the sentencing hearing, shows a knife on the ground.[2] The court cannot discern a knife on the ground in that photo, ECF No. 18-2 at 22, but will assume for purposes

---

[2] Neither party pointed the court to Commonwealth's Exhibit 15 in the record, but a photograph at ECF No. 18-2, page 22, is labeled "Commonwealth's Exhibit 15." That photograph appears to have been entered at the guilty plea proceedings rather than the sentencing hearing, based on its date of January 6, 2020.

of this petition that the item labeled "34" shows a knife near where Rountree fell when he died.

When the state habeas court addressed this issue, it determined that this claim satisfied neither the "performance" nor the "prejudice" prong of Strickland. The court found that Doljac admitted at the sentencing hearing that he was unaware whether the victims had any weapons. The court further noted that Jones told the police that he did not pull his pocketknife out of his pocket during the altercation. Doljac v. Director, Record No. 220704, at 7. The court found that because Doljac did not know that either Rountree or Jones were armed with knives when he shot them, the failure of his attorneys to inform him that a knife was found on the ground by Rountree's body was not ineffective assistance because there was not a reasonable probability that, but for counsel's alleged error, he would have gone to trial.

Doljac argues to this court that he is entitled to relief under the holding in Lafler v. Cooper, 566 U.S. 156 (2012). In Lafler, an attorney advised the defendant, incorrectly, that the prosecution would not be able to prove the defendant's intent to murder the victim because he shot the victim below the waist. Based on the attorney's advice, the defendant rejected two offers to plead guilty and went to trial, where he was convicted on several counts related to the shooting and sentenced to a much longer term than he had been offered in exchange for a guilty plea. Id. at 161. The Supreme Court held that defendants are entitled to competent counsel during the plea bargain process and all the parties agreed that the advice given by counsel in the case was deficient because it was not true that the prosecution could not convict given the facts of the case. Id. at 163.

The issue before the Court was whether the defendant was prejudiced by the bad advice, given that he had proceeded to a constitutionally sufficient trial and was convicted of murder in that proceeding. Id. at 163–64. The court found that he was prejudiced because there was a reasonable probability that had he received correct advice, both he and the trial court would have accepted the guilty plea and he would have received a sentence that was three-and-one-half times shorter than the sentence he received when he went to trial. Id. at 174.

In Doljac's case, he is arguing that he would have gone to trial had his attorneys told him that a photo of the spot where Rountree fell showed a knife nearby. But learning after the fact that either Rountree or Jones may have had a knife on them at the time of the shooting does not establish that Doljac would have insisted on going to trial and asserting a claim of self-defense. As set forth above, a defendant cannot establish that he acted in self-defense unless he is able to show that he believed and had reasonable ground to believe, at the time he acted, that he was in danger. Colas, 302 Va. at 29, 882 S.E.2d at 632 (emphasis added). Doljac cannot make that showing, because he testified that he did not remember the events around the shooting. Tr. of Sent. Hr'g, ECF No. 8-2 at 54. He said he believed that he had a seizure at the time of the shooting and remembered nothing after the first altercation when he, Rountree, and Jones engaged in fisticuffs. The last thing he remembered from the time Jones hit him until the next day when he learned Rountree had been shot, was "a horn and some bright lights." Id. at 171–73.

Given his sworn testimony, Doljac could not show that he acted in self-defense, even if he had known about the knife in the photo. With no memory of the events, he would be

unable to say that the knife belonged to either Rountree or Jones, much less that one of them brandished it and made Doljac believe he was in danger prior to shooting the two men. Moreover, Jones testified, and surveillance camera images showed, that Doljac exited Blankenbaker's vehicle and walked around it to shoot at Rountree and Jones. Given the evidence and Doljac's inability to remember events, it would not have been objectively reasonable for Doljac to proceed to trial and assert a claim of self-defense even if he had known about the gun in the photo. Accordingly, the state court's determination that Doljac's counsel was not ineffective for failing to disclose the presence of the knife in the photo is neither contrary to Supreme Court precedent nor an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

### (b) Counsel's Failure to Tell Doljac that Jones Had a History of Violence

The same is true of Doljac's contention that his attorneys were ineffective because they did not tell Doljac that Jones had a violent history.[3] Doljac argued that if counsel had advised him of Jones' violent history, "with such powerful information, it would have been straightforward to argue a self-defense case to a jury" and Doljac would not have accepted the plea agreement. Pet., ECF No. 1-1 at 9. This argument ignores Doljac's sworn testimony that he had no memory of the shooting, which means he could not have testified that he had a reasonable fear of Jones. Moreover, even if Doljac had testified that he remembered the moments immediately before the shooting, any testimony by him that he felt afraid of Jones

---

[3] Doljac attached to his state habeas petition copies of Jones' criminal records, including a misdemeanor conviction for assault and battery for an offense that occurred on July 4, 2017, a dismissed charge of misdemeanor assault and battery from March 2015, a conviction for a misdemeanor threat of illegal or immoral act over telephone from July 2017, and a nolle prossed charge of misdemeanor assault and battery from October 2017. ECF No. 11-3 at 3–10.

would have been belied by the video showing Doljac exiting the vehicle to confront Jones and Rountree with a gun. When deciding whether to go to trial or plead guilty, Doljac would have had to weigh the possibility that a jury could conclude that if Doljac feared for his life, he could have stayed in the vehicle and told Blankenbaker to drive away, against his knowledge of Jones' two previous misdemeanor convictions for assault. Given that choice, it is not reasonably probable that Doljac would have proceeded to trial, and the court is not convinced that a decision to go to trial on a theory of self-defense "would have been rational under the circumstances." Fugit, 703 F.3d at 260. Thus, the state habeas court's conclusion was not contrary to Supreme Court precedent or an unreasonable determination of facts in light of the evidence presented.

### 2. Court's Rationale for Upward Departure

Doljac's next two arguments revolve around the state trial court's decision to depart upward from the guidelines sentence. The upper end of Doljac's guidelines sentence was 22 years and 6 months, but the court departed upward to a total active sentence of 32 years. Sentencing Guidelines Cover Sheet, ECF No. 8-2 at 1; Sent. Order, ECF No. 8-2 at 10–13. The court stated that it departed upward because Doljac and Blankenbaker left the scene of the original altercation in a motor vehicle and then came upon Rountree and Jones. Doljac exited the vehicle with a pistol and fired eleven shots, killing Rountree and injuring Jones, and left without rendering aid. The court concluded that the "overall situation and act made guidelines simply inadequate on these factors." Sentencing Guidelines Cover Sheet, ECF No. 8-2 at 2.

**(a) Failure to Tell the Court About Jones' Violent History**

Doljac argues that if his attorneys had told the court that Jones had a violent history, there is a reasonable likelihood that the court "would have sentenced Doljac to less active time on both charges." Pet., ECF No. 1-1 at 13. The state habeas court denied this claim, noting that Jones testified at sentencing that he was intoxicated on the night of the incident and that he was aggressive when he drank. He admitted acting aggressively toward Doljac prior to their initial altercation and testified that he hit Doljac in the eye, injuring him, after Doljac pushed Rountree to the ground. Doljac v. Director, Record No. 220704 at 5; Tr. of Sent. Hr'g, ECF No. 82 at 79–85, 88–90. The state habeas court concluded that the trial court was aware of Jones' aggressive behavior on the night of the incident and that counsel could reasonably have determined that attempting to introduce additional evidence of Jones' history of aggression would not have helped Doljac's case. Doljac v. Director, Record No. 220704 at 5.

Doljac has not shown that the state court's conclusion is contrary to Supreme Court precedent or is an unreasonable determination of facts in light of the evidence. He cites Lafler, 566 U.S. at 163, for its holding that in the context of a plea agreement, a defendant must show that the outcome of the plea process would have been different with competent advice, but that determination is irrelevant to his argument that his attorneys should have informed the court about Jones' aggressive past. In addition, the state habeas court determination was reasonable. The trial court heard testimony that Jones was drunk and aggressive on the night of the incident, and it sentenced Doljac above the guidelines because he returned to the scene of the altercation in a vehicle, and exited and walked around the vehicle so that he could shoot Jones and Rountree. Nothing in the record indicates that the court would have sentenced

Doljac to a shorter sentence if it had known about Jones' misdemeanor convictions for assault and battery and threat of illegal or immoral act over a telephone. Accordingly, this claim must be dismissed.

### (b) Failure to Render Aid

The second rationale the court gave for departing upward on Doljac's sentence was because after shooting the men, Doljac failed to render aid and drove away. Sentencing Guidelines Cover Sheet, ECF No. 8-2 at 2. Doljac contends that his attorneys were ineffective because they failed to explain that the reason he did not render aid was because Jones and Rountree fled out of sight after the shooting and Doljac could not have known they had been hit by a bullet. He argues that had counsel informed the trial court of the reason he did not render aid, there is a reasonable probability that he would have received a shorter sentence. Pet., ECF No. 1-1 at 20.

The state habeas court rejected this claim because of Doljac's testimony that he did not remember the shooting. Doljac v. Director, Record No. 220704 at 8; Tr. of Guilty Plea Hr'g, ECF No. 8-2 at 54; Tr. of Sent. Hr'g, ECF No. 8-2 at 172–73. Given Doljac's testimony, there was no basis for his attorneys to have solicited additional testimony that he saw Jones and Rountree running away and did not realize they had been shot. Doljac offers no reason for this court to find the state habeas court's determination unreasonable or contrary to Supreme Court precedent.

### 3. Advice to Plead Guilty

Doljac also argues that his attorneys were ineffective for advising him to plead guilty when there was insufficient evidence to convict him at trial beyond a reasonable doubt. Pet.,

ECF No. 1-1 at 14–20. He asserts that there was undisputed evidence that Jones and Rountree

brutally beat Doljac and insufficient evidence that Doljac acted with sufficient malice to be

convicted of second-degree murder. Pet., ECF No. 1-1 at 16. He claims that it was ineffective

assistance for his attorneys to steer him away from going to trial and arguing that he acted in

self-defense or in the heat of passion, which would have reduced the charge to manslaughter.

Id. at 17.

As discussed above, it was not ineffective assistance for Doljac's attorneys to advise

him not to go to trial where he could make an argument that he acted in self-defense. Given

that Doljac claimed to have no memory of the shooting, he could not have argued that he was

afraid and had a reasonable basis for being afraid at the time he shot Rountree and Jones. Nor

could he have argued that he was acting in the heat of passion.

> A killing done in the heat of passion and upon reasonable
> provocation will reduce a homicide from murder to voluntary
> manslaughter. Barrett v. Commonwealth, 231 Va. 102, 105–06,
> 341 S.E.2d 190, 192 (1986) (citing Martin v. Commonwealth, 184
> Va. 1009, 1016–17, 37 S.E.2d 43, 46 (1946)). "Heat of passion
> refers to the furor brevis which renders a man deaf to the voice
> of reason." Caudill v. Commonwealth, 27 Va.App. 81, 85, 497
> S.E.2d 513, 514–15 (1998) (citation omitted). "[It] excludes
> malice when provocation reasonably produces fear [or anger] that
> causes one to act on impulse without conscious reflection."
> Graham v. Commonwealth, 31 Va.App. 662, 671, 525 S.E.2d
> 567, 571 (2000). "Heat of passion is determined by the nature and
> degree of the provocation and may be founded upon rage, fear
> or a combination of both." Barrett, 231 Va. at 106, 341 S.E.2d at
> 192.

Rhodes v. Commonwealth, 41 Va. App. 195, 200–01, 583 S.E.2d 773, 775–76 (2003).

Doljac did not remember shooting at Rountree or Jones, so he could not have offered

testimony that he was acting in the heat of passion. Moreover, Jones testified that the shooting

occurred "about two minutes" after the first physical altercation and video surveillance footage shows Blankenbaker's vehicle appearing on camera for approximately two minutes before Doljac got out and began shooting at the two men. Tr. of Sent. Hr'g, ECF No. 8-2 at 90–91, 93–97. That would have been strong evidence that Doljac acted with premeditation, rather than in the heat of passion. See United States v. Abdullah, No. 2007 WL 2046801, at *4 (4th Cir. 2007) (per curiam) (citing 40 Am.Jur.2d Homicide § 44 (2007)) ("'Premeditation' is a fully formed conscious purpose to kill that may be formed in a moment and need only exist for such time as will allow the accused to be conscious of the nature of the act he is about to commit and the probable result of that act."). Given this evidence, the recommendation by Doljac's attorneys that Doljac plead guilty rather than pursue a defense of either self-defense or heat-of-passion did not fall below an objective standard of reasonableness.

In addition, as pointed out by the state habeas court, by pleading guilty to two less serious offenses rather than proceeding to trial, Doljac reduced his statutory liability from a possible life sentence to a maximum sentence of 40 years. See Va. Code §§ 18.2-10 and -32. Recommending that Doljac plead guilty was not ineffective assistance given the great difference in his sentencing exposure.

Finally, as the state habeas court pointed out, Doljac did not address the fact that when he pled guilty, he stated under oath that his attorneys' performance was adequate and that he had discussed with the attorneys the charges and their elements, and possible defenses to the charges. He also said he was pleading guilty because he was, in fact, guilty of the charges. Doljac v. Director, Record No. 220704 at 6; Tr. of Guilty Plea, ECF No. 8-2 at 32–33, 36–37, 40.

The record in this case demonstrates that Doljac's attorneys gave him reasonable and competent advice when they advised him to plead guilty. The record further demonstrates that Doljac made a "voluntary and intelligent choice among the alternative courses of action open to [him]." Moussaoui, 591 F.3d at 280. Accordingly, Doljac has not met his burden of showing that the state habeas court's decision that he received effective assistance of counsel based on his attorneys' advice to plead guilty was erroneous.

### 4. Incorrect and Inflammatory Statements

Doljac's last ground for habeas relief is his assertion that his trial counsel was ineffective for failing to object to and correct the false and inflammatory statements made by the Commonwealth during the sentencing hearing. He claims that the Commonwealth "made the false implication that Jones did not have a weapon" when there was photographic evidence of a knife on the ground and evidence of which the Commonwealth was aware that Jones said he had a pocketknife in his pocket during the incident. Pet., ECF No. 1-1 at 20–22.

At the sentencing hearing, the Commonwealth's attorney said to Doljac, "How about the, the victims didn't have any weapons, right?" to which Doljac responded, "Not that I, I don't know." Tr. of Sent. Hr'g, ECF No. 8-2 at 130. Doljac argues that his attorneys were ineffective for failing to object to the question and for not pointing out the photographic evidence of the knife. However, the question was not based on a false presumption and was not inflammatory. Doljac was asked if he knew whether the victims had weapons and he replied that he did not. Ownership of the knife in the photograph was never established and even if it had been established, it was irrelevant because Doljac did not know whether either man had a weapon.

17

Moreover, the question was not asked in front of a jury, but at a hearing before the court after Doljac had pled guilty. "'A judge, unlike a juror, is uniquely suited by training, experience and judicial discipline to disregard potentially prejudicial comments and to separate, during the mental process of adjudication, the admissible from the inadmissible, even though he has heard both.'" Smith v. Commonwealth, 280 Va. 178, 184, 694 S.E.2d 578, 581 (2010) (quoting Commonwealth v. Allen, 269 Va. 262, 609 S.E.2d 4 (2005)).

The state court concluded that Doljac failed to establish whether his attorneys' performance was deficient or that there was a reasonable probability that but for the alleged error, the outcome of the proceeding would have been different. Doljac v. Director, Record No. 220704 at 6. This court agrees that counsel for Doljac were not ineffective for failing to object to this line of questioning.

### III. Request for a Hearing

Counsel for Doljac has requested a hearing in this matter so that he "may present evidence in support of these claims." Pet., ECF No. 1 at 15. However, Doljac has failed to establish the need for a hearing under either 28 U.S.C. § 2254(e)(2) or Rule 8 of the Rules Governing Section 2254 Cases. The statute provides the following:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

> (B) the facts underlying the claim would be sufficient to establish
> by clear and convincing evidence that but for constitutional error,
> no reasonable factfinder would have found the applicant guilty
> of the underlying offense.

28 U.S.C.A. § 2254(e)(2). In Doljac's case, the factual basis of his claim was developed in the state court proceedings and he does not assert otherwise. Although he asks for a hearing so that he may present evidence in support of his claims, he does not describe the evidence he would present or explain why he could not have discovered it earlier through the exercise of due diligence.

Moreover, in accordance with Rule 8 of the Rules Governing Section 2254 Cases, the court has reviewed the petition, the motion to dismiss, and the record of the state court proceeding and does not find that an evidentiary hearing is warranted as there are no factual disputes at issue. Rather, the court has been asked to determine whether Doljac's trial counsel was ineffective as a matter of law given the record developed in the state habeas case. As explained above, the state court records do not support such a conclusion.

## IV. Certificate of Appealability

When issuing a final order adverse to a § 2254 petitioner, the court must issue or deny a certificate of appealability. Fed. R. Gov. § 2254 Cases 11(a). A certificate of appealability may issue only if the movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The movant must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 338 (2003); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000). In the context of a procedural

ruling, the movant must demonstrate both that the dispositive procedural ruling is debatable and that the action states a debatable claim of the denial of a constitutional right. <u>Gonzalez v. Thaler</u>, 565 U.S. 134, 140–41 (2012). Doljac has not made the requisite showing.

### V. Conclusion

As set forth above, the court **DISMISSES** Doljac's habeas petition, ECF No. 1, because he has failed to show that he is incarcerated in violation of the Constitution. The court **GRANTS** the government's Motion to Dismiss, ECF No. 3. In addition, the court **DENIES** a certificate of appealability.

An appropriate order will be entered.

It is so **ORDERED**.

Entered: August 16, 2024

Mike Urbanski
Senior U.S. District Judge
2024.08.16 15:12:57
-04'00'

Michael F. Urbanski
Senior United States District Judge